**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**EDWARD PATTON**                                                                       **PLAINTIFF**

**versus**                                                   **CIVIL ACTION NO. 2:07cv72-KS-MTP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**                                             **DEFENDANT**

<u>REPORT AND RECOMMENDATION</u>

      Plaintiff Edward Patton ("Patton" or "plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner denying his claim for disability benefits and supplemental security income.  The matter is now before the court on the defendant's Motion for an Order Affirming the Decision of the Commissioner [13] and on Patton's Motion for Judgment on the Pleadings [10].  Having considered the pleadings, the transcript of the record, and applicable law, and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**Procedural History**

      On February 3, 2005, Patton applied for supplemental security income benefits (SSI) and disability benefits under the Social Security Act.  (Tr. 13.)  The application for benefits indicated that Patton had been unable to work since August 15, 2004, because of back and neck injuries and associated pain.  (Tr. 13, 60.)  His claims were denied initially on March 17, 2005 (Tr. 13, 23.), and upon reconsideration on May 10, 2005.  (Tr. 13, 30-36.)

      Patton then requested a hearing before an Administrative Law Judge (ALJ).  On November 29, 2005, the hearing requested by Patton was convened before Administrative Law Judge (ALJ) Charles Pearce.  (Tr. 192.)  Patton, who was represented by counsel at the hearing,

appeared and testified, as did Mr. Ronnie Smith, a vocational expert (VE). (Tr. 52, 192-194.) Employing the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f),[1] on June 28, 2006, the ALJ rendered his decision that Patton was not disabled within the meaning of the Social Security Act. (Tr. 13-18.) Patton then requested review by the Appeals Council on July 12, 2006. (Tr. 10.) The Appeals Council found no basis for changing the decision of the ALJ and denied Patton's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.)

Aggrieved by the Commissioner's decision to deny benefits, Patton filed a complaint in this court on April 5, 2007, seeking an order reversing the Commissioner's final decision, an award of benefits, or other alternative relief. Complaint [1]. The Commissioner answered [8] the complaint denying that Patton is entitled to any relief. The parties having filed dispositive motions pursuant to the Local Standing Order in Social Security Cases, the matter is now ripe for decision.

**Medical/Factual History**

The plaintiff was forty-nine years old as of the date of the hearing and a high school graduate (Tr. 195.) His work history includes employment as a roustabout supervisor unit late 2000 and, more recently, as a parking lot supervisor at Mississippi Auto Auctions. Patton

---

[1] The five steps focus on:
    1) whether the claimant is engaged in substantial gainful activity,
    2) whether the claimant has a severe impairment,
    3) whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1;
    4) whether the claimant can return to prior relevant work, and
    5) whether there is any work that exists in significant numbers in the national economy that the claimant can perform.

testified that he worked for the auto auction company for about three years, but was laid off in August of 2004. (Tr. 196.)

The medical records indicate that plaintiff has had a history of back pain beginning in March of 1998 when he sought treatment at the Columbia Clinic. He was injured at work while either lifting a pipe or attempting to catch a pipe dropped by a co-worker. (Tr. 114,152.) After initial treatments and physical therapy proved ineffective, plaintiff saw Dr. Charles Brent, who diagnosed him with cervical spondylosis and a herniated disc on November 21, 2000. (Tr. 112.) Dr. Brent ultimately performed a cervical fusion (C4, C5) on plaintiff on December 1, 2000. (Tr. 110.) After a number of follow-up visits, Dr. Brent noted that plaintiff's motor strength and gait were normal and that he was doing well. (Tr. 108.)

Following the back surgery and a period of recovery, Patton eventually obtained employment with Mississippi Auto Auctions as a parking lot supervisor. (Tr. 198-200.) He held this job for approximately three years, but was laid of in August of 2004. (Tr. 196.)

In November of 2004 plaintiff was injured in an automobile accident while a passenger in a vehicle that was hit from behind by another vehicle. (Tr. 198.) Following the accident, he was examined at the emergency room of Forrest General Hospital on November 13, 2004. (Tr. 116.) Hospital records reveal that plaintiff bumped his head in the accident but did not lose consciousness. (Tr. 116.) He complained of "generalized soreness to his shoulders, his neck and his back." (Tr. 116.) X-rays of his spine showed no acute problems (Tr. 118.), and an examination of plaintiff's neck revealed it to be "supple without mass, rigidity or tenderness." (Tr. 117.) Plaintiff did, however, exhibit "mild tenderness to the C-spine and T-spine areas" and some mild tenderness to the shoulders, but no swelling, discoloration, or deformity. (Tr. 118.)

Plaintiff was diagnosed with cervical and thoracic sprain and was prescribed Lortab and Flexeril. He was given a two-day work excuse. (Tr. 118.)

On November 15, 2004, plaintiff saw Dr. Scott Carlton, M.D. at the Columbia Clinic complaining of persistent neck pain, some central chest discomfort, and right upper extremity pain. (Tr. 139.) Plaintiff's neck was described as tender, with a bilateral spasm of the paravertebral musculature. (Tr. 139.) He had limited flexion and rotation to the left side while rotation to the right side was good. (Tr. 139.) Plaintiff's right extremity showed some mild tenderness around the elbow, but his range of motion was good, and his grip strength was "5/5 bilaterally equal." (Tr. 139.) Dr. Carlton's assessment was myofascial neck pain and right arm pain. (Tr. 139.) He was referred to physical therapy, provided with various prescriptions, and advised to return as needed. (Tr. 139.)

Over the next several weeks (November 17, 2004 through February 7, 2005), plaintiff sought treatment at Peavy Chiropractic Clinic in Hattiesburg, Mississippi. (Tr. 165-166.) The intake sheet from the chiropractic clinic indicated that plaintiff was referred by "Richard Schwartz & assit. (Ann Johnson)" and that the purpose of the appointment was "treatment for pain caused from accident." (Tr. 170.) Notations on the records from the Chiropractic Clinic reveal that Patton's last visit was on February 7, 2005, and that he was "doing good" and was "released." (Tr. 165.)

On July 7, 2005, plaintiff sought treatment at the Hattiesburg Family Health Center for complaints of low back pain. (Tr. 176.) The notes of Robert Moore, M.D. reveal that plaintiff was not in distress, his motor strength was normal, and his gait was normal. (Tr. 175-76.) He was assessed with cervical spondylosis, given a Medrol DosePak and Indocin, and directed to

4

return if his condition worsened or did not improve. (Tr. 176.) He saw Dr. Moore again on August 5, 2005, and he was referred to an orthopedist. (Tr. 175.)

Patton returned to the Hattiesburg Family Health Center on August 9, 2005, where he was examined by Akwasi Amponsah, M.D. (Tr. 174.) Patton's chief complaints were left elbow pain and lower back pain. Some edema was noted on his left elbow, but no crepitus on flexion. (Tr. 174.) The examination also revealed "tenderness on palpation of the paraspinal muscles of the lumbar area." (Tr. 174.) The assessment was "arthralgia of the elbow" and "degenerative disk disease of the lumbosacral area." Plaintiff was prescribed pain medications and was to await the orthopedic appointment. (Tr. 174.) Despite the referral, Patton never saw an orthopedist. (Tr. 216, 211-12.) At a follow-up appointment with Dr. Moore on September 9, 2005, plaintiff appeared to be in no distress and showed mild edema on the left elbow and some tenderness with palpation of paraspinal muscles. (Tr. 173.)

During an oral hearing held on or about November 28, 2005, a questionnaire completed by Dr. Moore and addressing plaintiff's functional limitations was submitted. (Tr. 177-181.) Dr. Moore characterized plaintiff's pain as severe; however, the only objective sign of pain or significant reduction in ranges of motion that he noted was "impaired sleep." (Tr. 178.) He estimated that plaintiff could crouch or stoop 30% of an eight-hour workday, could walk up to three city blocks without rest or severe pain, could sit continuously for 45 minutes, and could stand continuously for 30 minutes. (Tr. 178.) He further noted that plaintiff could sit/stand/walk less than two hours in an eight-hour workday, that plaintiff could be expected to lie down or rest occasionally during an eight-hour workday, and that plaintiff would not need a cane or other assistive device to stand or walk. (Tr. 179.) Dr. Moore predicted that plaintiff's symptoms could

worsen with continued activity, but did not expect any activity to make the symptoms worse. (Tr. 179.) He further predicted that plaintiff could be expected to miss work more than four times a month, that the impairments would last at least twelve months, and that the impairments could frequently interfere with plaintiff's concentration and attention. (Tr. 177-81.)

At the Commissioner's direction, plaintiff underwent a consultative examination with Dr. Cleve Johnson on December 22, 2005. (Tr. 182-87.) Plaintiff's chief complaint was noted as back pain. (Tr. 182.) Dr. Johnson's physical examination of plaintiff revealed: limitations in range of motion and flexion in the cervical spine; no atrophy in upper arms or forearms; full range of motion of all joints and both upper extremities; pinch and grip of 5/5 in both hands, good fine and gross manipulation in both hands; some limitations with dorsal lumbar spine; full range of motion in hips, knees and ankles; and walking with no external support or limp. (Tr. 182-83.) X-rays revealed no significant abnormalities. (Tr. 183.) Noting plaintiff's past surgery and history of degenerative disk disease, Dr. Johnson's impression was "chronic lumbosacral strain." (Tr. 183.)

An assessment conducted by the Office of Disability Determination Services indicated that plaintiff could lift ten pounds occasionally; stand/walk up to three hours in an eight-hour workday; sit up to three hours in an eight-hour workday; balance, kneel and crawl occasionally; never climb, stoop or crouch. (Tr. 184-85.) No limitations were noted with reaching, handling, feeling, pushing/pulling, seeing, hearing, or speaking. (Tr. 186.) It was noted that plaintiff had problems looking up and down due to the previous cervical fusion. (Tr. 185-86.)

## BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting

burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):
>
>> 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>> 2.  An individual who does not have a 'severe impairment' will not be found to be disabled.
>> 3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>> 4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>> 5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).   A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis." *Id.*

### The Administrative Law Judge's (ALJ) Analysis in This Case

After a hearing and upon considering the testimony and medical records, the ALJ rendered his decision on June 28, 2006.  (Tr. 13-18.)  At step one, the ALJ found that Patton had not engaged in performing any substantial gainful work at any time relevant to the decision.  (Tr. 15.)  He next found that Patton had lumbar and cervical disc disease, which are "severe" impairments within the meaning of the Social Security Act.  (Tr. 15.)

However, at step three, the ALJ found that Patton's impairments were not "listed

impairments" or equivalents thereof such that disability would be presumed. (Tr. 15.) He further concluded that Patton maintained the residual functional capacity (RFC) to perform light exertional level work based on the medical and other submitted evidence. "Light work" requires either a good deal of walking or standing, or it involves sitting most of the time with some pushing or pulling of arm or leg controls. Light work does not involve the lifting of more than twenty pounds at a time.[2] (Tr. 16.)

While Patton testified that he has debilitating back pain and cannot grip objects with his left hand, the ALJ found these statements to be inconsistent with the objective medical evidence. (Tr. 17.) Specifically, in December of 2005, the claimant was found to have normal 5/5 grip in both hands and normal, fine, and gross manipulation in both hands with a full range of motion in his upper extremities. (Tr. 16.) Patton has a normal gait and admits that he is able to drive, go shopping with his wife, attend church, and watch television. (Tr. 17.) Diagnostic imaging of Patton's lumbar spine was repeatedly normal. (Tr. 16-17.)

Although Patton was laid off from his job as a parking lot attendant in August 2004, he testified that he could have performed the job at that time had he not been terminated. (Tr. 205.) The ALJ further determined that while it was clear that Patton was in an auto accident in November of 2004, the only treatment he received was for thoracic and cervical strain. (Tr. 17.) X-rays of his back and neck were within normal limits. (Tr. 17.)

As to the opinion evidence, the ALJ acknowledged that the medical questionnaire completed by Dr. Moore did state that Patton was disabled. (Tr. 17.) However, the ALJ did not give Dr. Moore's opinion any special weight because "on the four occasions that Dr. Moore has

---

[2] *See* 20 C.F.R. 404.1567 (b).

seen the claimant, he has not indicated that the claimant's condition is as severe as he does on the questionnaire." (Tr. 17.) Morever, he noted that Dr. Moore had seen plaintiff only with "cursory" visits. (Tr. 17.) No functional capacity examination was performed by Dr. Moore or any other treating physician. (Tr. 17.) The ALJ found that Dr. Moore's responses on the questionnaire were simply inconsistent with the other evidence of record. (Tr. 17.)

At step four, the ALJ found that Patton could perform his past relevant work as a parking attendant at an auto auction, a job classified as light, semi-skilled work. (Tr. 17.) He specifically concluded that Patton maintained the residual function capacity to perform the mental and physical demands of the job as it is actually and generally performed in the national economy. (Tr. 17.) As the ALJ found that Patton could return to his past work, he concluded that Patton was not disabled. (Tr. 17.)

## STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames,* 707 F.2d at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614,

617 (5th Cir. 1990).  A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.  *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial evidence, it is conclusive and must be affirmed.  *Selders,* 914 F.2d at 617.

## THE ISSUES

Patton claims that the ALJ erred in the handling of his claim in two primary ways.  First, Patton argues that the ALJ failed to assign proper weight to the opinion of Dr. Moore, his treating physician.  Next, Patton claims that the ALJ's assessment of his residual functional capacity (RFC) was deficient.  Plaintiff's Brief [11], p. 8.  For the reasons which follow, the undersigned finds no merit to either argument.

**Issue no. 1 – The ALJ was not required to give the opinion of the treating physician controlling weight**

The Fifth Circuit has long held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  However, the treating physician's opinions are "far from conclusive" and the ALJ has the sole responsibility for determining the claimant's disability status.  *Greenspan v Shalala*, 38 F. 3d 232, 237 (5th Cir. 1994).

Applicable regulations provide guidance to the ALJ in evaluating opinion evidence.  For example, a treating physician's opinion may be given little weight when the nature and extent of the treatment relationship is narrow in scope and time, or when the treatment physician's

opinions are not well-supported by medically acceptable clinical and laboratory diagnostic techniques or are inconsistent with the other substantial evidence in the case. 20 C.F.R. § 404.1527. *See, e.g., Greenspan*, 38 F.3d at 237.

Additionally, a statement that an individual is disabled or cannot work is not a medical opinion, and the Commissioner is not bound to accept such a statement. The issue of whether a person is disabled is solely for the Commissioner to decide. *Moore v. Sullivan*, 919 F.2d 901,905 (5th Cir. 1990).

The ALJ determined that the questionnaire submitted by Dr. Moore was not entitled to any special weight. (Tr. 17.) That determination is supported by substantial evidence and consistent with the regulations cited above. First, the ALJ noted that Dr. Moore had seen the plaintiff only four times for "cursory" examinations. (Tr. 17.) The characterization of those visits as cursory is apt as the notations for each visit are very brief. (Tr. 173-76.)

The Commissioner points out that Dr. Moore actually saw plaintiff only three times as one of the visits referenced in the record[3] at Hattiesburg Family Clinic was with a Dr. Amponsah. Defendant's Brief [14], p. 6. A careful review of the record suggests that Dr. Moore might only have seen Patton twice, as one of the visits as noted in the record references an "Evelyn Patton." (Tr. 176.) Nevertheless, the documentation for those visits with Dr. Moore – whether there were two, three or four visits – reveals that the visits were brief, that plaintiff was in no distress, and that his gait was normal. (Tr. 173-76.) The entire treatment relationship spans from July 7, 2005 to September 9, 2005 and consists of these limited visits. (Tr. 173-76.)

Nevertheless, despite the limited treatment regimen and lack of supporting laboratory or

---

[3]Tr. 174.

11

clinical data, the claimant submitted a questionnaire from Dr. Moore dated November 28, 2005 that provided that plaintiff was restricted to walking three city blocks without rest or pain, sitting for 45 minutes continuously, and standing for 30 minutes.  (Tr. 177-81.)  The questionnaire is wholly unsupported by any test records or other data present in the record.  (Tr. 177-181.)

When asked to identify any objective signs of pain and significantly reduced ranges of motion experienced by Patton, Dr. Moore circled only "impaired sleep."  (Tr. 178.)  The ALJ was certainly justified in concluding that "the severity of Dr. Moore's assessment was not reflected in his treatment notes."  (Tr. 17.)

Moreover, Dr. Moore's opinions are inconsistent with the other medical evidence in the record.  As noted above, an examination of Patton was conducted by Dr. Johnson in December of 2005, shortly after the questionnaire was submitted by Dr. Moore.  (Tr. 182-87.)  According to the ALJ's decision, this examination was scheduled by the Social Security Administration "due to the lack of evidence supporting the claimant's disability claim."  (Tr. 16.)

Dr. Johnson's examination concluded that Patton maintained a full range of motion of all joints and both upper extremities, pinch and grip of 5/5 in both hands, good fine and gross manipulation in both hands, full range of motion in hips, knees and ankles, and walked with no external support or limp.  (Tr. 183.)  X-rays revealed no significant abnormalities.  (Tr. 183.) Additionally, when Patton completed a series of chiropractic treatments in early 2005, the treatment notes indicated he was "doing good" and was "released."  (Tr. 165.)

Thus, the ALJ correctly applied 20 C.F.R. § 404.1527 in determining that Dr. Moore's opinion should be given little weight.  Substantial evidence supports that conclusion as the nature and extent of the treatment was limited, the conclusions were not supported by clinical and

laboratory findings, and the conclusions were inconsistent with the other substantial medical evidence.

Patton argues that the ALJ should have re-established contact with Dr. Moore and relies upon 20 C.F.R. §§ 404.1512, 416.912 for support. However, as the Commissioner points out, that regulation provides that the ALJ is to re-contact a physician if the evidence received is inadequate to make a disability determination. Defendant's Brief [14], p. 8. The Fifth Circuit has held that an ALJ must seek clarification or additional evidence from the treating physician only where the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight *and* where there exists no other medical opinion evidence based on personal examination or treatment of the claimant. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(Emphasis added). This is not such a case. *See, e.g., Taylor*, 245 Fed. Appx. 387.

Additionally, the Fifth Circuit has held such an argument to be procedural in nature and that such "procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Taylor v. Astrue*, 245 Fed. Appx. 387 (5th Cir. 2007). Remand is appropriate only if the alleged procedural impropriety casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

As noted above, substantial evidence amply supports the ALJ's decision and, given the limited information supporting Patton's claim for benefits, the ALJ was certainly justified in ordering a consultative examination to determine the nature of Patton's disability, if any. The record does not support Patton's claim that the ALJ should have re-contacted Dr. Moore before

ordering the consultative examination. *See Taylor*, 245 Fed. Appx. at 390.

**Issue no. 2 – The ALJ correctly assessed the claimant's residual functional capacity and properly concluded that Patton could return to his past work**

The claimant has the burden of proving that he cannot return to his past relevant work. *Crowley v. Apfel*, 197 F.3d (194, 198) (5th Cir. 1994).   Patton had previously worked as a parking lot supervisor, a job which the vocational expert classified as semi-skilled, light work. (Tr.  215.)  To determine whether Patton could perform his former work as a parking lot superintendent, the ALJ was required to assess the physical demands of that job.  *See Hollis v. Bowen,* 837 F.2d 1379, 1386 (5th Cir. 1988).  Such a determination may rest on descriptions of past work as actually performed or as generally performed in the national economy.  *See Jones v. Bowen,* 829 F.2d 524, 527 n. 2 (5th Cir.1987).

The ALJ may take notice of job data in the *Dictionary of Occupational Titles* ("DOT"), which reflects the exertional requirements of a job as performed in the national economy. *See* 20 C.F.R. § 404.1566(d)(1); *Villa v. Sullivan,* 895 F.2d 1019, 1022 (5th Cir 1990).  The VE testified and the ALJ found that the occupation of parking lot superintendent is light, semi-skilled work. (Tr. 17).  Patton also testified about the demands of the job at the hearing and indicated that the job, as he actually performed it, required no lifting.  (Tr. 127.)

Dr. Johnson's report concluded that while Patton did have some limitations in range of motion and flexion in the cervical spine, he had no atrophy in his upper arms or forearms, full range of motion of all joints and both upper extremities, a pinch and grip of 5/5 in both hands, good fine and gross manipulation in both hands, some limitations with his dorsal lumbar spine, and full range of motion in hips, knees, and ankles, and that he walked with no external support

or limp. (Tr. 183.) X-rays revealed no significant abnormalities. (Tr. 183.) As the Commissioner points out, these conclusions were drawn from plaintiff's own medical history. Defendant's Brief [14], p. 9.

Patton asserts that the ALJ did not assess the various physical and mental demands of the job or the plaintiff's physical limitations with regard to lifting, sitting, standing, etc. However, the ALJ specifically referenced Dr. Johnson's report in his decision and addressed these various factors and limitations in some detail. (Tr. 16, 182, et seq.) Likewise, as noted above, the ALJ questioned the VE at the hearing and determined that the job of parking lot superintendent was light, semi-skilled work and referenced the job by DOT number. (Tr. 215.) The decision applied correct standards and is supported by substantial evidence.

Patton further argues that it was a "gross error of fact" for the ALJ to state that Patton could return to his job after November 9, 2004.[4] However, that conclusion appears to be the only reasonable one that could be reached based upon the scant medical evidence presented. As indicated, after the automobile accident in November 2004, X-rays of Patton's cervical and thoracic spine were normal, and he was given pain medication and a two-day work excuse. (Tr. 15, 118.) Plaintiff then followed up with several chiropractic visits, after which he was released as "doing good." (Tr. 165-66.) The record reveals no surgery or diagnostic testing following the accident. About six months later, Patton saw Dr. Moore a few times, but the record does not indicate that Dr. Moore conducted any testing or other diagnostic procedures. (Tr. 173-76.)

---

[4] Patton initially claimed disability as of August 2004 when he was laid off from his job as a parking lot superintendent. However, the onset date of disability was amended at the hearing to November 9, 2004, the date of the automobile accident. (Tr. 13, 208.) In his opinion, the ALJ concluded that claimant had not been under a disability from August 15, 2004 "through the date of this decision." The date of the decision was June 28, 2006. (Tr. 18.)

Nevertheless, Dr. Moore assigned Patton various limitations in the questionnaire, despite never having indicated that Patton had ever complained of symptoms consistent with these limitations during any of Dr. Moore's visits with him. (*See* Tr. 173-76; Tr. 177-81.) The ALJ was justified in affording little weight to Dr. Moore's conclusions.

Plaintiff bears the burden of proving at step four that he cannot return to his past relevant work[5], and he has not met that burden. Plaintiff was laid off from his job, and he admitted during the hearing that he could have continued working in that job if he had not been let go, at least until his condition was aggravated by his November, 2004 car accident. (Tr. 17, 205.) Plaintiff also testified that he still goes shopping with his wife and that he still attends church on a monthly basis. (Tr. 206-07.) He also testified that he was able to do household chores (cutting grass and picking up garbage) until the 2004 car accident. (Tr. 202.)

In making his determination, the ALJ considered the medical records and found that no medical evidence was present to support Patton's claim that his condition was different after his car accident than it had been before. (Tr. 17.) The ALJ noted that X-rays on Patton's neck and back were within normal limits and that he was only treated for cervical and thoracic strain.[6] (Tr. 17.) The record contains no diagnostic evidence to support Patton's claim that he became disabled as a result of the 2004 car accident, nor is there evidence present that shows Patton's neck and back pain were more severe after the car accident than before. (*See* Tr. 17.) Patton has not seen an orthopedic surgeon (Tr. 216.), despite being advised to do so. As of the hearing date, he apparently had not even had an MRI. (Tr. 216.)

---

[5]*Crowley*, 197 F.3d at 198.

[6]See Tr. 118.

As noted above, substantial evidence to supports the ALJ's decision and, given the lack of evidence in the medical record to support Patton's claims, the ALJ correctly assessed plaintiff's residual functional capacity and properly concluded that Patton could return to his past work.

## CONCLUSION/RECOMMENDATIONS

The undersigned agrees with the Commissioner's decision that Patton is not entitled to disability benefits under the Social Security Act and finds that the decision is supported by substantial evidence and utilizes correct legal standards. It is, therefore, the recommendation of the undersigned that the Commissioner's motion to affirm [13] be granted and the denial of benefits affirmed. The undersigned further recommends that Patton's motion for judgment on the pleadings [10] be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Association,* 79 F.3d 1415,

1428-29 (5th Cir. 1996).

    THIS the 17th day of June, 2008.

                                                   s/ Michael T. Parker
                                                 United States Magistrate Judge